UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

───────────────────────────────

Shawn Simmons,                                              Civil No.: 08-405 (JNE/AJB)

               Petitioner,

vs.                                                         **REPORT AND RECOMMENDATION**

Dwight L. Fondren, Warden,

               Respondent.

───────────────────────────────

      This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] filed on February 15, 2008. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(a).

      Petitioner is a federal prisoner incarcerated at the Federal Correctional Institution ("FCI") in Sandstone, Minnesota. He was sentenced in the United States District Court for the District of South Carolina to a term of 60 months for "Knowingly Using and Carrying a Firearm During and in Relation to, and Possession of a Firearm in Furtherance of, a Drug Trafficking Crime, in violation of 18 U.S.C. § 924 (C)(1)(a)." See Resp't Return 1-2 [Docket No. 7]. His anticipated release date is October 9, 2009. Id. at 2. Petitioner asserts that he was denied due process when prison officials took away 54 days of his Good Conduct Time for violating prison code and possessing a hazardous tool. He seeks expungement of the disciplinary record and restoration of the lost good-time credit.

      On February 19, 2008, the undersigned ordered Respondent to show cause why the writ

should not be granted [Docket No. 3]. Respondent's return filed on March 28, 2008, opposes Petitioner's § 2241 motion asserting that Petitioner's claim should be dismissed as the discipline procedures used in this case satisfy federal case law and the revocation of Petitioner's Good Conduct Time satisfies the "some evidence" standard. See Resp't Return 8.

**FINDINGS**

**I. Background**

On February 22, 2007, a cook supervisor at FCI-Bennettsville in South Carolina found "two pouches and a battery charger, in the top portion of the camp food service roll up door, on the reardock." See Buege Decl., Attach. B [Docket No. 7]. At that time, Petitioner was serving his sentence at the Bennettsville facility. Prison officials found a "Cingular Cell Phone/Camera/Key Pad combination and a set of head phones" in the first pouch. Id. The second pouch contained a gold ring, pad pointer, charging wires, and an unknown pill. Id. Upon searching the phone's hard drive, prison officials discovered that a phone number on the cell phone matched Petitioner's phone records. Id.[1] Based on this information and after investigation by a Special Investigative Supervisor ("SIS"), Petitioner was charged with Possession of a Hazardous Tool in violation of Code 108. Id. at ¶ 9. Petitioner was also charged with Use of a Phone for Other Than Criminal Activities, Namely to Circumvent Telephone Monitoring Procedures, in violation of Code 297. Id.

At the time of this incident, Petitioner was serving disciplinary segregation time in a Special Housing Unit ("SHU") for a previous cell phone use violation. Id. at ¶ 26. Petitioner was provided with a copy of the SIS's incident report, and was read the contents of said report on

---

[1] The Court would note that the record is not clear as to whether this number was merely entered into the cell phone's hard drive or that calls were actually made to that number from that phone.

March 31, 2007. Id. at 24. Petitioner denied using the cell phone asserting that he had been in SHU since January 31, 2007. Id. Petitioner did acknowledge that the number on the cell phone hard drive belonged to his cousin. Id. However, Petitioner contended that he gave his cousin's number to another inmate, Rodney Douglas. Id. Douglas was given this number so that "he could get visits and have someone to write to." Id.

The prison's Unit Discipline Committee ("UDC")[2] then conducted an investigation of the incident. A review of Petitioner's quarters history indicated that he was in fact in SHU at the time the cell phone was discovered. Id. at ¶ 26. Therefore, the UDC investigator recommended that the incident be expunged due to the impossibility of committing the violation from SHU. Id. Notwithstanding this recommendation, UDC referred the aforementioned charges against Petitioner to the discipline hearing officer ("DHO")[3] for disposition based on the severity of the charges. Id. at ¶ 19.

On April 3, 2007, Petitioner received a written statement from DHO explaining his rights for the upcoming hearing. See Buege Decl., Attach. C. Petitioner did not want a staff member to represent him at the hearing, but did wish to call Douglas as a witness. Id. During the proceeding in front of the DHO on April 26, 2007, Petitioner offered a brief personal statement, as well as a written statement from Douglas. Id. at Attach. D. Petitioner maintained his earlier contention that he did not use the cell phone and that it was Douglas who called his cousin. Id. However, this time Petitioner claimed that he gave Douglas the number so that Douglas could talk to his cousin about the real estate business. Id. Petitioner's cousin was a real estate agent

---

[2] See 28 C.F.R. § 541.15.

[3] See 28 C.F.R. § 541.16.

and Douglas wanted information about housing in anticipation of his release from prison. Id. This alternative explanation as to why Douglas called Petitioner's cousin was confirmed by Douglas' own written statement to DHO. Id.

At the conclusion of the hearing, the DHO found that Petitioner had possessed the cell phone in violation of Code 108. Id. at ¶¶ IV and V. The name "CU" corresponded with the number found on the phone's hard drive and the DHO concluded that this abbreviation most likely stood for "cousin." Id. at ¶ V. The DHO stated that Petitioner could have contacted his cousin and used the cell phone before entering SHU. Id. On Petitioner's actual phone records this number was listed as "other relative" and the DHO found that there was no other viable explanation to connect the number to another inmate. Id. The DHO did consider the statements made by Petitioner and Douglas, but stated that their explanations were not credible because Petitioner's reason for giving Douglas the cell phone at the DHO proceeding was inconsistent with his explanation in front of the UDC. Id. Furthermore, the DHO said that Douglas' statement that he was seeking real estate advice was not plausible because Petitioner's cousin was a real estate agent in New York, and Douglas was not scheduled to be released to the New York area. Id. It was also unlikely that Douglas would enter the number into the cell phone as "CU" when the number belonged to Petitioner's cousin. Id. Moreover, the DHO considered the fact that Petitioner was in SHU at the time the phone was discovered for an identical incident concerning prohibited cell phone use as further evidence to tie Petitioner to the charge. Id.

Based on this evidence, the DHO concluded that Petitioner possessed the cell phone in question and thereby violated Code 108, Conduct Which Disrupts and Interferes with the Orderly Running of a BOP Facility most like Possession of a Hazardous Tool. Id. The Code 297, Use of a Telephone for Abuses Other Than Criminal Activity, charge was stricken from the

record. Id.  The DHO imposed sanctions of Disallowance of 54 days of Good Conduct Time, Disciplinary Segregation for 60 days, and Loss of Telephone Privileges for 365 days. Id. at ¶ VI. The nature of the sanctions corresponded to the seriousness of the charge as the DHO noted that unmonitored calls made by inmates "jeopardize[] the security of the institution and pose[] a threat to the ability of staff to provide for the safety and security of staff, inmates and the general population as a whole." Id. at V.  "These calls can contain threats to the general public, plans for escape attempt or planning and/or participating in other illegal activity." Id.

     Petitioner received a copy of the DHO's report and was also advised of his appeals rights. Id. at ¶ VIII.  Respondent does not contend that Petitioner failed to exhaust administrative remedies before seeking relief from this Court. See Buege Decl., p. 8.

**II. Discussion**

     A prisoner must be afforded at least some procedural due process protections before being deprived of good-time. Wolff v. McDonnell, 418 U.S. 539, 557 (1974).  Nonetheless, a prisoner is not entitled to the full panoply of procedural rights that accompany a criminal prosecution when that prisoner is facing a loss of good-time credits. Id.  Constitutional due process mandates only that a prison disciplinary action satisfy the simple procedural requirements prescribed in Wolff.  Therefore, prisoners facing a loss of good-time credits must be given (1) advanced written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his/her defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Espinoza v. Peterson, 283 F.3d 949, 952 (8th Cir. 2002)(citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)).  In addition,

due process requires that there be "some evidence" in the record supporting the disciplinary determination. Id.

In this instance, the record does not support Petitioner's claim that he was disciplined in violation of his due process rights. To the contrary, the record shows that Petitioner received at least the minimal procedural benefits prescribed by Wolff. Petitioner was provided an incident report on March 30, 2007, which afforded him written notice of the charges, and he makes no claim to the contrary. See Buege Decl. at ¶ 6; see also Attach. B at ¶ 24.[4] Next, he was present at proceedings before a UDC on April 3, 2007,[5] and a hearing before a DHO on April 26, 2007.[6] Petitioner was advised of his rights prior to both hearings, including the right to a staff representative and the right to present witnesses and documentary evidence. See Buege Decl., Attach. B at ¶ 24, Attach. C. Finally, Petitioner was provided with a written report of the hearing officer's decision explaining the evidence he relied on in charging Petitioner with "Conduct Which Disrupts and Interferes with the Orderly Running of a BOP Facility most like Possession of a Hazardous Tool," as well as his reasons for the sanctions imposed, including the loss of 54 days of good-time. Thus, from a procedural standpoint, the Court finds that the record indicates that Petitioner was disciplined in accordance with Wolff.

Petitioner's specific claims are largely evidentiary in nature in that he contends that: (1) he was in SHU at the time the cell phone was discovered; (2) the UDC investigator also concluded that Petitioner was in SHU at the time the cell phone was discovered; (3) Douglas

---

[4] Petitioner was provided a copy of the incident report, and a FCI staff member read him said report. Id.

[5] See Buege Decl. at ¶ 8; see also Attach. B.

[6] See Buege Decl. at ¶ 10; see also Attach. D.

constantly admits that he called Petitioner's cousin in February 2007 when Petitioner was in SHU; and (4) while Douglas was not to be released to the New York area where Petitioner's cousin resided, his cousin's real estate business had offices in South Carolina, North Carolina, Maryland, New York, and a few other states, and Douglas was merely seeking advice on mortgage rates he could receive upon release. See Pet. Attach.-Regional Administrative Remedy Appeals. The Supreme Court has held, however, that the findings of a prison disciplinary authority should not be second-guessed by the federal courts as long as they "are supported by some evidence in the record." Hill, 472 U.S. at 454. This standard is satisfied:

> "if 'there is some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Comm'r of Immigr., [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56 (emphasis added).

The findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. The Court in Hill recognized that prison discipline proceedings take place in a highly charged environment and often require that prison officials take swift action on the basis of evidence that might be insufficient in less exigent circumstances. Id. at 456. Consequently, "[r]evocation of good time credits is not comparable to a criminal conviction, ... [citation omitted], and neither the amount of evidence necessary to support such a conviction, ... [citation omitted], nor any other standard greater than some evidence applies in this context." Id. Simply stated, where there is at least some evidence to support the hearing officer's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

In this matter, the Court finds that the minimal "some evidence" standard is met. Petitioner's credibility was diminished significantly due to the inconsistent statements made as to why he gave Douglas his cousin's number, and the fact that he was in SHU at the time the cell phone was discovered for a similar cell phone use violation. The number on the cell phone hard drive matched Petitioner's phone records, and did not match the phone records of any other inmates. It was also possible that Petitioner entered his cousin's number on the cell phone before entering SHU.[7] Thus, the Court finds that this evidence could support the DHO's conclusion, and ultimately satisfies the "some evidence" standard prescribed in Hill.

The DHO took into consideration all of the available evidence, and determined that Petitioner committed the act. Wolff provides that inmates be given an opportunity to persuade an impartial decision maker that he did not commit the prohibited conduct as alleged. Petitioner was given such an opportunity, and the DHO was not persuaded by his claims. Based on all the evidence, the DHO reasonably concluded that Petitioner committed the prohibited act and sanctioned him in accordance with policy. The disciplinary proceeding by which Petitioner was sanctioned comported with the due process requirements set forth in Wolff and Hill. Petitioner's Petition for a writ of habeas corpus should therefore be denied.

---

[7] The Court would also note that while it was not discussed in the briefing, there are two notations in the record that indicate that Petitioner admitted to the violation which would only further support the "some evidence" standard to uphold the DHO's decision. See Buege Decl., Attach. D, p. 2; Attach. F.

**RECOMMENDATION**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus [Docket No. 1] be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE**.


Dated: __October 10, 2008_____        __s/ Arthur J. Boylan_____
                                      Arthur J. Boylan
                                      United States Magistrate Judge


     Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **October 31, 2008**.